UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELTA SMELT CONSOLIDATED CASES | 1:09-CV-00407 OWW DLB |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.* v. SALAZAR, *et al.* (1:09-cv-00407 OWW DLB) | 1:09-cv-00480-OWW-GSA  1:09-cv-00422-OWW-GSA  1:09-cv-00631-OWW-DLB  1:09-cv-00892-OWW-DLB |
| STATE WATER CONTRACTORS v. SALAZAR, *et al.* (1:09-cv-00480-OWW-GSA) | Partially consolidated with: 1:09-cv-01201-OWW-DLB |
| COALITION FOR A SUSTAINABLE DELTA, *et al.* v. UNITED STATES FISH AND WILDLIFE SERVICE, *et al.* (1:09-cv-00422-OWW-GSA) | MEMORANDUM DECISION RE FEDERAL DEFENDANTS' MOTION TO AMEND THE JUDGMENT OR IN THE ALTERNATIVE FOR A STAY PENDING APPEAL (DOC. 856) |
| METROPOLITAN WATER DISTRICT v. UNITED STATES FISH AND WILDLIFE SERVICE, *et al.* (1:09-cv-00631-OWW-DLB) | |
| STEWART & JASPER ORCHARDS, *et al.* v. UNITED STATES FISH AND WILDLIFE SERVICE (1:09-cv-00892-OWW-DLB) | |
| FAMILY FARM ALLIANCE v. SALAZAR, *et al.* (1:09-CV-01201-OWW-DLB) | |

I.   INTRODUCTION

On March 29, 2011, Final Judgment was entered on all remaining claims in this case.  The 2008 Delta Smelt Biological Opinion ("BiOp"), its Reasonable and Prudent Alternative ("RPA"), and Reclamation's December 2008 Provisional Acceptance of the RPA were remanded without vacatur with the following instructions:

> 1.   USFWS shall complete by October 1, 2011 a new delta smelt Biological Opinion consistent with the Court's December 14, 2010 Memorandum Opinion, with the exception of making express written findings in either the BiOp or the Administrative Record as to the first

>three factors of the four-part regulatory definition of an RPA in 50 C.F.R. § 402.02, which shall be completed by November 30, 2011.
>
>2. Reclamation shall complete review of the RPA in accordance with NEPA by December 15, 2011.

Doc. 851 at 3.

On April 8, 2011, Federal Defendants moved to alter or amend the judgment, or in the alternative for a stay pending appeal, on the ground that the new BiOp, RPA, and NEPA compliance could not be completed within the time limits prescribed. Doc. 856. Federal Defendants filed a proposed amended judgment, which alters the existing deadlines to extend completion of the entire remand process 30 months from October 1, 2011. Doc. 856-2. Federal Defendants also filed the Declarations of Susan Fry and Jennifer Norris. Docs. 857 & 858. San Luis & Delta Mendota Water Authority and Westlands Water District; Metropolitan Water District of Southern California; State Water Contractors; Coalition for a Sustainable Delta and Kern County Water Agency; Stewart & Jasper Orchards, Arroyo Farms, LLC, and King Pistachio Grove; and the Family Farm Alliance (collectively, "Plaintiffs") oppose the specific terms of Federal Defendants' proposed amended judgment, instead proposing their own 20-month remand schedule. Docs. 864 & 864-1. Plaintiffs also filed the declarations of James Snow and Susan Hootkins. Docs. 866 & 867. Plaintiff-in-Intervention, the California Department of Water Resources ("DWR"), partially joins Plaintiffs' opposition, and does not

2

oppose a remand lasting between 20 and 30 months. Doc. 865. Federal Defendants replied. Doc. 868. Defendant Intervenors filed an objection to Plaintiffs' request to now set an interim remedies hearing in August 2011. Doc. 869.

Federal Defendants' request to have their motion heard on shortened time was granted. *See* Docs. 859, 860. A hearing was originally set for April 22, 2011, but was continued by agreement of the parties to April 27, 2011, Doc. 862, when the matter was heard.

## II.   DISCUSSION

**A.   Motion to Alter/Amend Judgment.**

**1.   Standard.**

A motion to alter or amend the judgment is timely if filed within twenty-eight days of the entry of judgment. Fed. R. Civ. P. 59(e). The district court "has considerable discretion when considering a motion to amend a judgment." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citing Fed. R. Civ. P. 59(e)). Although Rule 59(e) itself does not state the grounds on which relief may be granted, the Court of Appeals has established that altering or amending the judgment is proper where "the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Circuit City Stores. v. Mantor*, 417

3

F.3d 1060, 1064 (9th Cir. 2005). The district court has subject matter jurisdiction to consider a timely motion under Rule 59(e) even where such motion is filed subsequent to a notice of appeal. *Tripati v. Henman*, 845 F.2d 205 (9th Cir. 1988). The filing of a Rule 59(e) motion suspends the operation of a notice of appeal until it is resolved, at which point the notice of appeal becomes effective. *See* Fed. R. App. P. 4(A)(4)(B)(i).

    2.   <u>Application.</u>

Federal Defendants maintain that it is not feasible to complete by the end of 2011 a new BiOp, RPA analysis, and NEPA review to satisfy the December 14, 2010 memorandum decision ("December 2010 MSJ Decision"). Federal Defendants emphasize that no party proposed such a compressed schedule.

        a)   <u>Interpretation of the December 2010 MSJ Decision.</u>

Federal Defendants' motion to amend the judgment is premised on their interpretation of the December 2010 MSJ Decision. According to Federal Defendants' interpretation, the Court has ordered the completion of several "time- and resource-intensive harm and feasibility analyses," including:

> (a) developing "alternatives" to the Reasonable and Prudent Alternative that the Service deems necessary to avoid jeopardy and adverse modification; (b) measuring and addressing water supply needs beyond the species; (c) accounting for competing demands for water from the Projects, including but not limited to the requirements of Cal. Water Code § 275, Cal. Const. art. X, § 2, and Section 8 of the Reclamation Act of 1902, 43 U.S.C. § 383; and (d) making express written findings in either

4

the BiOp or the Administrative Record as to the first three factors of the four-part regulatory definition of an RPA in 50 C.F.R. § 402.02.

Doc. 856-1 at 6. Subparagraph (a) accurately reflects the prior holding that Reclamation violated NEPA by failing to effect any NEPA compliance prior to adopting and implementing the 2008 Smelt BiOp. *See generally* Doc. 399. Subparagraph (d) accurately recognizes the ruling that FWS acted unlawfully by failing to include written findings in either the BiOp or the AR concerning the first three factors of the four-part regulatory definition of an RPA in 50 C.F.R. § 402.02.

As to subparagraphs (b) and (c), Federal Defendants' offer selectively incomplete portions of the December 2010 MSJ Decision that do not accurately reflect the entirety of the language or the intent of the decision. The relevant passages from the Decision cited by Federal Defendants in support of these additional "requirements" are found at pages 96, 194 n.47, 195, 200, and 218-19. The quoted language from page 96 follows a lengthy discussion of FWS's failure to explain why it compared data from two non-comparable models to quantitatively justify remedial measures designed to address a shift of X2 purportedly caused by Project operations:

> This is of particular concern because DWR, a joint operator of the projects communicated its scientific and operational concerns based on known available science. DWR and Reclamation have legal obligations to allocate water supply reasonably and responsibly, not solely to save the species. As discussed [] below at

> Part VII.B, FWS's focus on its responsibilities to the species appears to have caused it to ignore <u>its own regulations' obligations to consider impacts to the overall water supply and additional uses</u>. The potential impacts of inaccurate quantitative analyses in the BiOp cannot be understated.

Doc. 757 at 96 (emphasis added). The emphasized text was not intended to and did not order that FWS balance economic and water supply costs against those of the species. Rather, the agency acted unlawfully because it failed to adequately explain its decision to compare non-comparable data sets as part of its <u>quantitative</u> justification for remedial actions. The agency did not articulate or employ an "institutionalized caution" rationale to justify setting specific RPA targets at levels more protective than those which are absolutely necessary. The December 2010 MSJ Decision did not address whether it would have been appropriate to incorporate such a rationale into the justification for those remedial actions.

Federal Defendants cite portions of the December 2010 MSJ Decision focusing on the specific requirements of 50 C.F.R. § 402.02, including the requirement that any RPA be consistent with the intended purpose of the action:

> The specific requirements of the X2 action are another example of how the record fails to address the "consistency with the intended purpose of the action," and is "within the scope of the ... agency's authority and jurisdiction." 50 C.F.R. § 402.02. Because of competing demands for water from the Projects, combined with a limited supply, one purpose of the Projects is to ensure that that water use and allocation be carefully managed, and to also ensure that water is put

6

> to a beneficial use and not wasted. This purpose is, in fact, required by California law, Cal. Const. art. X, § 2; Cal. Water Code § 275, and imposed upon federal project operations by virtue of Section 8 of the Reclamation act of 1902. 43 U.S.C. § 383. The Projects will have to expend hundreds of thousands of acre feet of water to maintain X2 as far seaward as Component 3 requires. Miller Decl., Doc. 400, at ¶¶ 67-73. Less water would be required if X2 did not need to be pushed so far downstream—water would then be available for other uses. Yet nothing in the BiOp or the record explains why it is essential that X2 be moved seaward to the degree required by Component 3 in order to protect the smelt and its habitat.

Doc. 757 at 194 n.47. Page 195 continues:

> Even if, *arguendo*, the RPA is consistent with the multiple purposes of the action and the agency's statutory authority, and is economically and technologically feasible to implement, the APA requires, and the public is entitled under the law to receive, some exposition in the record of why the agency concluded (if it did so at all) that all four regulatory requirements for a valid RPA were satisfied. The RPA Actions manifestly interdict the water supply for domestic human consumption and agricultural use for over twenty million people who depend on the Projects for their water supply. "Trust us" is not acceptable. FWS has shown no inclination to fully and honestly address water supply needs beyond the species, despite the fact that its own regulation requires such consideration.
>
> How the appropriation of water for the RPA Actions, to the exclusion of implementing less harmful alternatives, is required for species survival is not explained. The appropriate remedy for such a failure to explain is remand to the agency.

While the "institutionalized caution" interpretation of the ESA might justify <u>some</u> movement of X2 seaward of FWS's best estimate of what is "<u>necessary</u>" for the species survival, the APA requires FWS to justify its actions with the best available science. The

7

failures identified in the BiOp do not concern application of the precautionary principle, because FWS does not articulate "institutionalized caution" or the precautionary principle as rationales for its specific actions.  Nor does the December 2010 MSJ Decision prevent FWS from articulating a basis for its actions that includes a precautionary approach.  Rather, the December 2010 MSJ Decision points out that FWS <u>entirely</u> failed to comply with its own regulatory requirements in 50 C.F.R. § 402.02, compliance with which should have triggered evaluation of whether or not moving X2 downstream to the extent required by the RPA was justified.  The significant impacts upon the water supply serve to emphasize the practical consequences of FWS's failure. The exact meaning and scope of the requirements in section 402.02 that FWS ensure that the RPA "can be implemented in a manner consistent with the intended purpose of the action ... can be implemented consistent with the scope of the Federal agency's legal authority and jurisdiction ... [and] is economically and technologically feasible," was not decided by the December 2010 MSJ Decision.[1]

Federal Defendants also cite pages 199-200 of the December 2010 MSJ Decision, presumably to emphasize the following paragraph:

> Stewart & Jasper's contention that FWS's reserved to

---

[1] These issues are more explicitly raised by the pending cross motions in the Consolidated Salmonid Cases, which have yet to be decided.

> itself "an ongoing power of oversight, as well as a power to dictate new and different pumping restrictions," assumes that neither Reclamation, as action agency, nor DWR, as co-operator, have the ability to not comply with the RPA. Doc. 697 at 87. Reclamation is not legally compelled to blindly follow FWS's pronouncements. Reclamation retains the authority to reject the RPA at any time, subject to its obligation to reinitiate consultation. <u>Although FWS has not yet demonstrated a willingness or capability to protect interests other than the species, it cannot be assumed that Reclamation will not lawfully discharge its statutory water supply responsibilities</u>.

(Emphasis added.) This comment imposes no practical burdens upon Federal Defendants at all.

Finally, Federal Defendants cite pages 218-219 from the Conclusion:

> It cannot be disputed that the law entitles the delta smelt to ESA protection. It is significant that the co-operator of the Projects, DWR, in its endeavors to protect a substantial part of the State's water supply, opposes as unjustified and based on bad science some of the RPA Actions. It is equally significant that despite the harm visited on California water users, FWS has failed to provide lawful explanations for the apparent overappropriation of project water supplies for species protection. In view of the legislative failure to provide the means to assure an adequate water supply for both the humans and the species dependent on the Delta, the public cannot afford sloppy science and uni-directional prescriptions that ignore California's water needs. A court is bound by the law. Resource allocation and establishing legislative priorities protecting the environment are the prerogatives of other branches of government. The law alone cannot afford protection to all the competing interests at stake in these cases.

This passage summarizes earlier findings and imposes no further burdens on Federal Defendants.

Federal Defendants' argument is that the December 2010 MSJ

Decision requires FWS to "balance" the needs of the species against economic interest. No such requirement exists. What the Court did hold was that the additional analyses required on remand by both agencies are substantial. The BiOp and its RPA are unlawful under the ESA and need to be remanded. Further, the action agency's failure to comply with NEPA's requirements requires an analysis of water supply impacts that demands cooperation of Project operators and the action agency.

        b)    <u>Justification for 30-Month Proposed Schedule.</u>

Federal Defendants now propose that the best way to complete remand is to permit FWS to develop the required analyses in consultation with Reclamation and concurrently with Reclamation's NEPA process. It is not disputed that Reclamation, the action agency, not FWS, has the expertise to evaluate water supply impacts and related effects. Federal Defendants assert that concurrent preparation of the revised BiOp and the NEPA document will enhance the quality of the end product. Specifically, Defendants now propose that remand, including certification of a new BiOp, completion of NEPA analysis, and satisfaction of all the other requirements of the Court's December 14, 2010 Memorandum Opinion, will take until <u>May 1, 2014</u>.

Federal Defendants' rationale for this deadline is as follows:

- A draft BiOp and RPA can be completed by October 1, 2011;
- Completion of an EIS is expected to take 30 months following

10

formulation of the draft RPA.  *See generally* Fry Declaration.  Doc. 857.

- The procedures of NEPA are rigorous:  The Agency must develop a list of issues to be analyzed and submit those to the public for "scoping" comments, which usually involves numerous public meetings.  Reclamation anticipates it could draft and publish the NOI within 9 months of receiving the draft RPA.  *Id*. at ¶ 11.

- Then, the agency must complete a Draft EIS and submit that to other federal agencies and the public comment.  Even for far less complex projects, this can take years to complete.  Reclamation anticipates issuing a draft EIS approximately 17 months after receiving the draft RPA.  *Id*. at ¶ 13.

- The agency must then respond to any comments by modifying alternatives, developing and evaluating new alternatives, correcting errors and or explaining why comments do not warrant further response.  40 C.F.R. § 1503.4.  Only then may an agency prepare a final EIS.  40 C.F.R. § 1502.9.  NEPA then requires a 30-90 day period for additional public comment.  40 C.F.R. § 1506.10(b)-(d).

- Finally, NEPA requires Reclamation to issue a final record of decision ("ROD") stating the agency's decision, identifying alternatives considered and stating all practicable means to avoid or minimize environmental harm.

11

Reclamation anticipates it could issue a ROD no earlier than <u>30 months</u> from the issuance of the RPA. Fry Decl. at ¶ 14.

Federal Defendants proposed schedule has FWS producing a draft BiOp consistent with the December 2010 MSJ Decision by October 1, 2011, and provides that FWS and Reclamation will cooperate during the NEPA review process to produce the information necessary to complete the remaining tasks, including preparation of additional analyses required by 50 C.F.R. § 402.02 and NEPA review. Within one month after Reclamation completes its NEPA review, FWS will complete the remaining tasks.

Plaintiffs argue that 30 months is unreasonable and present the declaration of Susan G. Hootkins, a senior consultant at ENTRIX, an environmental consulting firm with considerable NEPA compliance experience, including on projects for Reclamation. She states that Federal Defendants' timeframe is "not aggressive and provides more time than legally or reasonably necessary ... principally because it includes over estimates of the time needed to complete some of the basic steps in the NEPA process." Doc. 867 at ¶ 7. She opines that 10 months can reasonably be shaved off the 30 month estimate. *Id*. at ¶ 16.[2] Plaintiffs also cite numerous cases in which the NEPA process was expedited by a court order. *See* Doc. 864 at 13. It is unquestioned that all parties

---

[2] Federal Defendants correctly point out that Plaintiffs' alternative 20-month schedule is not properly before the court because Plaintiffs did not separately move to amend the judgment.

12

and the water-consuming public urgently require and deserve some degree of predictability. The longer the work remains uncompleted, the greater the dislocation to all.

The agencies, not the Court, are in the best position to determine how long it will take them to complete these required processes. A court cannot tell the agencies how to allocate resources on remand, nor how to accomplish the required tasks. Plaintiffs' declarant is unfamiliar with agency operations, budgets, staffing, expertise and resources. Federal Defendants' own declarant, Susan Fry, is familiar with these matters and has opined that a 30-month schedule is the absolute minimum time necessary to complete all the work. She anticipates considerable public interest in these issues, which will preclude the accelerated timetable Plaintiffs recommend. Plaintiffs' declarant also assumes Reclamation could begin the NEPA process on May 2, which is not possible given the condition precedent, issuance of a draft BiOp and RPA, will not be completed until October 1, 2011.

Federal Defendants have demonstrated that the existing Final Judgment would cause manifest injustice, as it would require FWS and Reclamation to complete their duties on remand in a time frame impossible for them to achieve. Federal Defendants' schedule delays completion of a new BiOp, which extends uncertainty and increases the likelihood that court intervention

13

in annual water allocations will be necessary.  However, Plaintiffs' suggestion that a deadline of December 2012 should be chosen with the understanding that Federal Defendants could apply for an extension if needed does not permit Federal Defendants to proceed with remand in an orderly manner.

Federal Defendants' motion to amend the judgment is GRANTED, but the deadline will be modified to require completion of a final BiOp, RPA, and NEPA review by December 1, 2013.  This is approximately 32 months from now, 36 months following the December 2010 MSJ Decision, and prior to the water season in which supply restrictions have historically been imposed to protect the species.

B.  **Motion for Stay Pending Appeal.**

As an alternative to an amended judgment, Federal Defendants move for a stay pending appeal.  Federal Defendants represented in open court that they do not prefer and would withdraw their motion for a stay if the motion to amend is granted to permit a complete and lawful BiOp, RPA, and NEPA process to be accomplished.  It is unnecessary to address the alternative motion for a stay.

C.  **Additional Requests for Correction.**[3]

---

[3] These additional requests are to correct the Final Judgment to accurately reflect success on the merits.  A court may correct a clerical mistake of this nature on its own, with or without notice.  *See* Fed. R. Civ. P. 60.  Normally, leave of the appellate court would be required if the correction is made while

1. **State Water Contractors' Request.**

State Water Contractors ("SWC") also request that Paragraph C of the Final Judgment be amended to reflect that they prevailed on their Fifth claim for relief, which alleged among other things that Federal Defendants violated the Endangered Species Act ("ESA") and 50 C.F.R. § 402.02 by failing to determine whether the RPA could be implemented consistently with the scope of DWR's legal authority and jurisdiction. *See State Water Contractors v. Salazar, et al.,* 1:09-cv-00480 OWW GSA, Doc. 1 at 34-36. This claim, which narrowly focuses on the RPA's consistency with <u>DWR's</u> legal authority, was not squarely addressed by the December 2010 MSJ Decision. SWC points to page 194 n.47, which states:

> The specific requirements of the X2 action are another example of how the record fails to address the "consisten[]tcy with the intended purpose of the action," and is "within the scope of the ... agency's authority and jurisdiction." 50 C.F.R. § 402.02. Because of competing demands for water from the Projects, combined with a limited supply, one purpose of the Projects is to ensure that that water use and allocation be carefully managed, and to also ensure that water is put to a beneficial use and not wasted. This purpose is, in fact, required by California law, Cal. Const. art. X, § 2; Cal. Water Code § 275, and imposed upon federal project operations by virtue of Section 8 of the Reclamation act of 1902. 43 U.S.C. § 383. The Projects will have to expend hundreds of thousands of acre feet of water to maintain X2 as far seaward as Component 3 requires. Miller Decl., Doc. 400, at ¶¶ 67-73. Less water would be required if X2 did not need to be pushed so far downstream—water would then be available for other uses. Yet nothing in the BiOp or the record explains why it is essential that X2 be moved seaward to the degree required by Component 3 in order to protect the smelt and its habitat.

---

an appeal is pending, *id.*, but, as discussed above, the filing of a Rule 59(e) motion suspends the operation of a notice of appeal until it is resolved, *see* Fed. R. App. P. 4(A)(4)(B)(i).

Doc. 757 at 194 n.47. This footnote discussed 50 C.F.R. § 402.02, which provides:

> Reasonable and prudent alternatives refer to alternative actions identified during formal consultation that can be implemented in a manner consistent with the intended purpose of the action, that can be implemented <u>consistent with the scope of the Federal agency's legal authority and jurisdiction</u>, that is [sic] economically and technologically feasible, and that the Director believes would avoid the likelihood of jeopardizing the continued existence of listed species or resulting in the destruction or adverse modification of critical habitat.

50 C.F.R. § 402.02 (emphasis added). The regulation plainly restricts itself to consistency with the <u>federal</u> agency's legal authority and jurisdiction. Footnote 47 discussed provisions of California law because those are "imposed upon federal project operations by virtue of Section 8 of the Reclamation act of 1902. 43 U.S.C. § 383." No authority has been presented suggesting that this regulation should be extended to impose a requirement that the RPA be consistent with a state agency's legal authority and jurisdiction. SWC did not prevail on its fifth claim for relief. Its motion to amend the judgment is DENIED.

   2.   <u>Coalition for a Sustainable Delta & Kern County Water Agency's Request.</u>

Coalition for a Sustainable Delta ("Coalition") and Kern County Water Agency ("KCWA") separately request that Paragraph C of the Final Judgment be amended to reflect that they prevailed on their Third claim for relief, which alleged Federal Defendants failed to adequately analyze the status of the species and the

environmental baseline in the BiOp in violation of the ESA and Administrative Procedure Act.  *See Coalition for a Sustainable Delta, et al. v. U.S. Dept. of the Interior, et al.,* 1:09-cv-00422 OWW GSA, Doc. 23, at 22-23.  The December 2010 MSJ Decision found a number of errors in the BiOp's baseline analysis of "other stressors" on the smelt.  *See* Doc. 757 at 146-155.  These findings result in the Coalition's and KCWA's success on their Third Claim.  The Amended Final Judgment shall be corrected to reflect this success.

### III. CONCLUSION

Federal Defendants' implicit contention that water supply impacts of the OCAP cannot be considered under the ESA is a total abdication of NEPA's requirement to evaluate the impacts of the RPA on humans.  Federal Defendants cannot avoid this responsibility by isolating the ESA issues.

The remand schedule must be revised.  Federal Defendants' have demonstrated that the existing deadline for completion of remand is infeasible.  They say they need 30 months.  The Court would prefer to see the work done in 24 months.  Federal Defendants' request to amend the judgment is GRANTED, with the slight modification discussed above.  A draft BiOp shall be completed on or before October 1, 2011, and a final BiOp and RPA, as well as the required NEPA analysis, shall be completed by December 1, 2013.

17

Plaintiffs' alternative 20-month proposal is not properly before the court and does not reflect a realistic commencement date or an enforceable process, given limited agency resources.

SWC's motion to correct the Final Judgment is DENIED.

The Coalition's and KCWA's motion to correct the Final Judgment is GRANTED.

Federal Defendants shall submit a proposed Amended Final Judgment consistent with this memorandum decision within five (5) days following electronic service of this decision.

SO ORDERED
Dated:  May 4, 2010
                              /s/ Oliver W. Wanger
                           United States District Judge