# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELTA SMELT CONSOLIDATED CASES | 1:09-CV-00407 OWW DLB<br>1:09-cv-00480-OWW-GSA<br>1:09-cv-00422-OWW-GSA<br>1:09-cv-00631-OWW-DLB<br>1:09-cv-00892-OWW-DLB<br><br>Partially consolidated with:<br>1:09-cv-01201-OWW-DLB<br><br>MEMORANDUM DECISION RE JURISDICTION TO CONSIDER PLAINTIFFS' INJUNCTIVE RELIEF PETITION RE FALL X2 ACTION. |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.* v. SALAZAR, *et al.* (1:09-cv-00407 OWW DLB) | |
| STATE WATER CONTRACTORS v. SALAZAR, *et al.* (1:09-cv-00480-OWW-GSA) | |
| COALITION FOR A SUSTAINABLE DELTA, *et al.* v. UNITED STATES FISH AND WILDLIFE SERVICE, *et al.* (1:09-cv-00422-OWW-GSA) | |
| METROPOLITAN WATER DISTRICT v. UNITED STATES FISH AND WILDLIFE SERVICE, *et al.* (1:09-cv-00631-OWW-DLB) | |
| STEWART & JASPER ORCHARDS, *et al.* v. UNITED STATES FISH AND WILDLIFE SERVICE (1:09-cv-00892-OWW-DLB) | |
| FAMILY FARM ALLIANCE v. SALAZAR, *et al.* (1:09-CV-01201-OWW-DLB) | |

## I. INTRODUCTION

A December 27, 2010 Order on Plaintiffs' Motions for Summary Judgment found that Federal Defendants violated the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"), and that the 2008 Delta Smelt Biological Opinion ("BiOp") for the coordinated operations of the Central Valley Project ("CVP") and State Water Project ("SWP") and its Reasonable and Prudent Alternative ("RPA") are "arbitrary, capricious, and unlawful."

The BiOp was remanded without vacatur to the United States Fish and Wildlife Service ("FWS"), with an express reservation of jurisdiction, for further consideration "in accordance with this decision and the requirements of law." Doc. 763. A December 2, 2009 Order found "that [the United States Bureau of] Reclamation violated [the National Environmental Policy Act ("NEPA")] by failing to perform any NEPA analysis prior to provisionally adopting and implementing the 2008 BiOp and its reasonable and prudent alternative." Doc. 457.

Final Judgment was entered March 28, 2011 and amended May 17, 2011. Doc. 884. The Amended Judgment states that the district court "expressly retains jurisdiction during the period of remand, to the extent permitted by law, in the event issues arise concerning project operations." Doc. 884, ¶ I. On April 7, 2011, Defendant-Intervenors filed a notice of appeal. Doc. 853. Federal Defendants have not appealed.

Plaintiffs have noticed a motion for injunctive relief against Federal Defendants' implementation of RPA Component 3 (Action 4), also referenced as the "Fall X2 Action," which requires the Projects to be operated to maintain $X2^1$ during the fall months at a location no greater than 74 km upstream from the Golden Gate Bridge following wet water years, and no greater than

---

[1] $X2$ is the location in the Delta where the salinity is two parts per thousand, measured as the distance upstream from the Golden Gate. *Consolidated Delta Smelt Cases*, 717 F. Supp. 2d 1021, 1029 (E.D. Cal. May 27, 2010).

2

81 km upstream following above normal water years. BiOp at 282-283. This is a wet year and Plaintiffs estimate implementation of the Fall X2 Action will require use of approximately 1,000,000 acre-feet of water. *See* Doc. 920 at 7. Defendants now maintain that the district court does not retain jurisdiction to address the requested injunctive relief. Doc. 909.

## II. PREVIOUS RULINGS RE FALL X2 ACTION

A December 14, 2010 Memorandum Decision Re Cross Motions for Summary Judgment ("12/14/2010 MSJ Decision"), Doc. 757, rejected some of Plaintiffs' challenges to the BiOp's rationale for the Fall X2 action, but found that the BiOp's X2 analysis was flawed in two critical respects. The rationale for the action rests in large part on a comparison of runs from two different computer models for Project operations, Calsim II and Dayflow. The Decision found that, in the absence of calibration of the two models, which was not performed, "the Calsim II to Dayflow comparison has the potential to introduce significant, if not overwhelming, bias to the analysis that the BiOp nowhere discussed or corrected." 12/14/2010 MSJ Decision at 125-26. The X2 action was remanded to the agency for further consideration of the implications of this error to the BiOp's findings. *Id*. at 220.

The Decision further held that the BiOp violated the APA's requirement that FWS "examine the relevant data and articulate a

3

satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), as well as FWS's own Consultation Handbook implementing the ESA, which requires "a thorough explanation of how each component of the [RPA] is essential to avoid jeopardy and/or adverse modification," ESA Handbook at 4-43, because the BiOp "fail[ed] to explain why it is essential to maintain X2 at 74 km and 81 km respectively, as opposed to any other specific location." 12/14/2010 MSJ Decision at 126-27. The practical result of the X2 Action is to allow large volumes of Project water to escape into the ocean.

### III. DISCUSSION

*Natural Resources Defense Council v. Southwest Marine Inc.*, 242 F.3d 1163, 1164 (9th Cir. 2001), provides the governing standard. In *Southwest Marine*, a marine repair and maintenance company challenged the district court's modification of an injunction while an appeal was pending. After trial, the district court found Southwest Marine violated the Clean Water Act and imposed an injunction as a civil penalty that included water testing and storm water recapture requirements. *Id*. at 1165. The district court simultaneously issued a limited stay of enforcement of the water testing and pier storm water recapture requirements, asking for further argument and briefing on: (1)

4

whether the district court should substitute testing of the surface "microlayer" for testing "at the surface," and (2) possible engineering alternatives to pier storm water recapture. *Id*. The district court eventually received further briefing and held a hearing, but not until after Southwest Marine appealed the original judgment, including the injunction. After the hearing, the district court modified the injunction by substituting: (1) testing of the surface "microlayer" for testing "at the surface," and (2) an 18-month deadline for the requirement of "reasonably expeditious" construction of a facility to capture pier storm water runoff. Southwest Marine later appealed the district court's jurisdiction to modify the injunction. *Id*. at 1165-66.

    The Ninth Circuit reviewed the general legal framework:

> Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982). This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983); 20 James Wm. Moore, Moore's Federal Practice, § 303.32[1] (3d ed. 2000). The principle of exclusive appellate jurisdiction is not, however, absolute. *Masalosalo*, 718 F.2d at 956; 20 Moore's § 303.32[2][b]. <u>The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo</u>. *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (1922); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976); *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 79 (9th Cir.1951).
>
> This exception to the jurisdictional transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure, which allows a district court to

> "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." <u>This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it "does not restore jurisdiction to the district court to adjudicate anew the merits of the case."</u> *McClatchy Newspapers*, 686 F.2d at 734. Thus, any action taken pursuant to Rule 62(c) "may not materially alter the status of the case on appeal." Allan Ides, The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed, 143 F.R.D. 307, 322 (1992).

*Id*. at 1166 (emphasis added).

The Ninth Circuit first defined the status quo as of the filing of the appeal:

> The status quo as of the filing of Southwest Marine's consolidated appeal required Southwest Marine to conduct water column testing, including testing "at the surface," and to take steps to capture storm water runoff from piers "in a reasonably expeditious manner."

*Id*. The Appeals court next examined the purpose of the injunction:

> The purpose of the water column testing is to determine whether blasting or painting operations conducted by Southwest Marine on each vessel in dry dock or at pier side is contributing to pollution levels in San Diego Bay. The purpose of the storm water capture requirement is to prevent Southwest Marine from discharging storm water that degrades the marine habitat of its offshore leasehold, which the district court found to be "devoid of life."

*Id*. at 1166-67.

The Appeals Court reasoned that the district court's "post-judgment modifications to the injunction were minor adjustments that effectuated the underlying purposes of the original requirements," and "did not materially alter the status of the consolidated appeal." *Id*. at 1167. The Ninth Circuit also

emphasized that the modification "left unchanged the core questions before the appellate panel deciding the [] appeal," *id*. at 1167, namely "whether the district could permissibly (1) require any water column testing, including testing 'at the surface,' or (2) require the construction of a pier storm water capture facility." *Id*. at 1167.

*Southwest Marine* distinguished *McClatchy Newspapers*, "where the district court amended its original judgment, in which it had affirmed an arbitrator's decision that a guarantee of lifetime employment survived a sympathy strike, to require reinstatement of the striking employees." *Id*. (citations omitted). The *Southwest Marine* panel reasoned:

> [In *McClatchy*] The reinstatement issue had not received a full and fair hearing, was not before the appellate court, and could not be undone by the appellate court's ultimate reversal of the arbitrator's decision. *Id*. at 735 (noting that affirmance of the district court's amended judgment "would affect substantial rights of the parties after appeal"). Thus, the reinstatement order had impermissibly altered the status of the case on appeal.
>
> Southwest Marine's case presented a very different situation. If the core requirements of water column testing and pier storm water capture were ultimately reversed on appeal, the "microlayer" testing requirement and the 18-month construction deadline would also effectively be reversed, leaving none of Southwest Marine's substantial rights affected after the conclusion of the consolidated appeal. Southwest Marine had a full and fair hearing on these core issues before the district court and before the appellate panel deciding its consolidated appeal.

*Id*.

*Southwest Marine* stands generally for the following propositions:

7

>    (1) A district court may act to preserve the status quo while an appeal is pending.
>    (2) The status quo is measured at the time the appeal is filed.
>    (3) The district court may only act to effectuate the underlying purposes of the original judgment and may not materially alter the status of the appeal or change the core questions before the appellate panel.
>    (4) It is impermissible to alter the status of the case on appeal by taking further action that cannot be undone by the appeal.  In other words, the district court's post-appeal action must be grounded upon an issue that will receive a full and fair hearing before the appellate panel, leaving the burdened party's substantial rights unaffected if a reversal is issued.

Applying these principles to the facts of the present case, the district court has jurisdiction to hear Plaintiffs' injunctive relief petition.

   The first step is to determine the status quo.  Federal Defendants point out that the BiOp and its RPA has been remanded but not vacated.  Therefore, they argue that the status quo is operation of the projects pursuant to the RPA (including the Fall X2 Action) as described in the BiOp.  This position is a material distortion of the record and cannot be adopted for two reasons.

8

First, Plaintiffs indicated their intent to move for injunctive relief against the Fall X2 Action long before Final Judgment was entered or the appeal was filed. Defendants strenuously resisted immediate injunctive proceedings on the Fall X2 Action when a hearing was requested by Plaintiffs, on the ground that, at the time, it was not clear whether the Bureau would implement the Fall X2 Action during the 2010-2011 water year; i.e., it was premature for the district court to entertain an application for injunctive relief before it was certain the Fall X2 Action would be implemented based on this water year's hydrology.

Second, the 12/14/2010 Decision found the X2 Action was unlawful and unjustified on several grounds. This Fall X2 Action is unprecedented and had never before been implemented. Remand was ordered with the Court's understanding that any future unlawful action in Project operations would be the subject of provisional remedy proceedings. In remanding without vacature, the Court understood that, as has been the case throughout the over five years of active litigation over the Delta Smelt, as operational issues arise, the parties may seek and have sought provisional remedies during periods of remand of biological opinions to the Agency. The parties that sought remand without vacatur never disclosed they intended to argue that a remand without vacatur insulated CVP operations from judicial review during an appeal.

The disputed Fall X2 Action has never been triggered. The status quo as of the filing of the appeal on April 7, 2011 is that the implementation of the Fall X2 Action is an unprecedented possibility, which is projected to take one million acre feet of water from lawful users, and that Plaintiffs would have the opportunity to move to enjoin the Action if its implementation was reasonably certain.[2]

The next inquiry is whether acting upon Plaintiffs' request for injunctive relief would effectuate the underlying purposes of the original judgment. The answer is unquestionably yes. The judgment found the Fall X2 Action was unlawful in a critical respect, namely that the unprecedented specific water prescription imposed, which requires huge amounts of Project yield, was unjustified by the record. Permitting the Action to be implemented without even considering the totality of its on-the-ground consequences would undermine the purposes of the judgment and the obligation of a court sitting in equity to

---

[2] In related cases, after biological opinions were remanded without vacatur, no party has ever objected to the district court's assertion of jurisdiction to grant interim injunctive relief. Here, Defendants first mentioned their jurisdictional objection during discussions over the form of the final judgment in this case. Federal Defendants argue that this changed position is justified in light of the distinct circumstances here, where final judgment has been entered and an appeal has been taken. But, Federal Defendants fail to acknowledge the specific and repeated reservations of jurisdiction by the district court. Federal Defendants' failure to disclose this position, although they have taken no appeal, prevented the Court from fashioning the remand order to express the Court's intent to condition the remand to the Agency on the Court's ability to address ongoing operational issues. The decision not to vacate the BiOp was based in part upon the assumption that the district court would have continued jurisdiction to review application of the RPA under ever-changing circumstances.

protect all competing human interests, health, and safety, not only the species.

The district court may not materially alter the status of the appeal, change the core questions before the appellate panel, and/or take further actions that cannot be undone by the appeal. Defendants argue that that Plaintiffs' merits brief rehashes issues already decided in the 12/14/2010 Decision. A preliminary review of the opening merits brief, Doc. 990, reveals that there is considerable overlap between the arguments there advanced and those addressed in the 12/14/Decision. *Southwest Marine* and related cases prohibit the district court from reconsidering issues already ruled upon, as this would impermissibly create a "moving target" for the appeal. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)(discussing the example of *McClatchy Newspapers*, in which the district court's modification of an order "reflected a change in the result of the very issue on appeal; if allowed to stand, the appeals court would be dealing with a moving target if it ruled on the revised order or, alternatively, its ruling would be obsolete if it ruled on the 'old' order").

However, the procedural posture of the cross-motions for summary judgment is distinct from a request for injunctive relief. The 12/14/2010 Decision ruled in favor of Plaintiffs and found the Fall X2 Action unlawful. Consideration of whether

11

injunctive relief is required to prevent new, never imposed, operational prescriptions which may cause irreparable injury will not revisit or in any way modify the final judgment.  Nor does the pending appeal preclude consideration of the <u>strength</u> of the scientific bases for the X2 Action in deciding a request for equitable relief.  Considering whether the scientific rationale for an action is weak is legally distinct from finding that the agency violated the APA in advancing such a rationale.

*Hoffman for and on Behalf of N.L.R.B. v. Beer Drivers and Salesmen's Local Union No. 888*, 536 F.2d 1268 (9th Cir. 1976), explains that the general rule that an appeal to the circuit court deprives the district court of jurisdiction as to matters involved in the appeal "is not a creature of statute and is not absolute in character."

> It is our opinion that the rule should not be applied in those cases where the district court, as here, has a continuing duty to maintain a status quo, and where, as the days pass, new facts are created by the parties and the maintenance of the status quo requires new action.

*Id*. at 1276.  This is such a case.  New facts are constantly being created by environmental conditions and continuing operating requirements of the Projects.  Such requirements may change hourly.  Maintenance of the status quo may require changes to Project operations.  The appeal does not remove the district court's jurisdiction over the BiOp's remand to the Agency and the ongoing operation of a federal Reclamation project.

12

## IV. CONCLUSION

For the reasons set forth above, the appeal does not implicate whether the Court has jurisdiction to examine issues arising out of the coordinated operations of the Projects.  No provisional remedial relief in this unique water year will affect the Appeals Court's review of the issues raised by the judgment.  Any party has the right to seek injunctive relief against an unlawful RPA Action, if the result of the Action in a given water year causes irreparable injury to humans and/or the public interest.  Defendants' argument is that the Court cannot even consider the nature and effect of the Fall X2 Action on all affected parties and society at large.  This is not a case where the requested actions will change the judgment in any way.  The district court has jurisdiction to hear Plaintiffs' request for injunctive relief against the Fall X2 Action.  Briefing shall proceed as scheduled.

Plaintiffs shall submit a proposed form of order consistent with this memorandum decision within five (5) days following electronic service.

SO ORDERED
June 24, 2011
/s/ Oliver W. Wanger
United States District Judge